IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JASON NICHOLS,

                Plaintiff,

v.                               CIVIL ACTION NO.  3:18-0266

COUNTY COMMISSION OF CABELL
COUNTY, a public corporation,
BETH THOMPSON, in her official capacity
and individually, and
PHYLISS SMITH, in her official capacity
and individually.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the Motions to Dismiss, pursuant to Federal Rule of Civil

procedure 12(b)(6), submitted by Defendants County Commission of Cabell County ("Cabell

County"), Beth Thompson, and Phyllis Smith. *Def. Cabell County's Mot. to Dismiss*, ECF No. 10;

*Def. Beth Thompson's Mot. to Dismiss*, ECF No. 12; *Def. Phyllis Smith's Mot. to Dismiss*, ECF

No. 14. Defendant Beth Thompson moves to dismiss all Counts of Plaintiff's complaint, whereas

Defendant Cabell County moves to dismiss only Counts II, III, and IV, and Defendant Phyllis

Smith moves to dismiss only Count IV. *Def. Cabell County's Mot. to Dismiss*, at 1; *Def. Beth

Thompson's Mot. to Dismiss*, at 1; *Def. Phyllis Smith's Mot. to Dismiss*, at 1.

In Count I and II, Plaintiff claims that Defendants terminated his employment because of

his exercise of his First Amendment right to free speech, in violation of 42 U.S.C. §1983 ("section

1983"); in Count III, Plaintiff claims that Defendants unlawfully retaliated against him in violation

of the West Virginia Whistle-blower Law; and in Count IV, Plaintiff claims that Defendants fired

him in violation of West Virginia public policy, constituting an unlawful retaliatory discharge. *Compl.*, ECF No. 1, at 6, 8, 10, 12.

The parties have fully briefed the issues and the motions are now ripe for adjudication. As explained below, the Court **DENIES** Defendants' motions.

## I.      BACKGROUND

Plaintiff, Jason Nichols, by counsel, filed a complaint with this Court on February 6, 2018, seeking relief from Defendants Cabell County, Phyllis Smith, and Beth Thompson. *Compl.*, at 1. In his complaint, Plaintiff alleges the same three claims against all Defendants: (1) violation of 42 U.S.C. §1983; (2) unlawful retaliation in violation of the West Virginia Whistle-blower Law; and (3) a West Virginia common law claim for unlawful retaliatory discharge in violation of substantial public policy, also known as a *Harless* claim. *Id.* at 6, 8, 10, 12.  In his section 1983 claim, Plaintiff is suing Defendants Thompson and Smith in both their individual and official capacities. *Id.* at 6, 8.

The following facts are alleged by Plaintiff, Jason Nichols, in his complaint, and are assumed true for purposes of this Motion to Dismiss. Plaintiff was employed with the Cabell County Commission as a deputy clerk from August of 2015 until January 8, 2018, where he was responsible for administrative and ministerial tasks related to Cabell County's budget. *Id.* at 3. Starting on September 1, 2017, Plaintiff began reporting directly to the newly appointed Clerk of Cabell County, Defendant Phyllis Smith. *Id.* Additionally, the County Administrator of Cabell County, Defendant Beth Thompson, frequently sought to direct and control Plaintiff's work. *Id.* Defendant Thompson was appointed by Defendant Cabell County on or about July 1, 2015. *Id.* at 1–2.

Beginning around the Spring of 2017, the Office of the Prosecuting Attorney of Cabell

County ("OPA") was investigating the financial affairs of Cabell County. *Id*. at 3. The scope of that investigation increased over time, due in part, to reports that Plaintiff made to the OPA describing suspected instances of misconduct. *Id*. For example, Plaintiff reported to the OPA that Defendant Thompson intended to hand over full control, responsibility for, and privileges of Cabell County's payroll accounts to an out-of-state third-party vendor, which he believed to be illegal under West Virginia law. *Id*. Plaintiff also reported to the OPA his concern that Cabell County taxpayers were paying large amounts of insurance for approximately $30 million of fixed assets when there had been no physical audit of the fixed assets to verify if such assets even existed. *Id*. at 4. Finally, Plaintiff reported to the OPA his concern that Defendant Thompson stated that Cabell County employees were going to be required to pay more for medical insurance. *Id*. Plaintiff reported that the required increases appeared to be unwarranted because the County had been given a refund on claims the previous year, and the account holding the self-insured medical insurance funds contained an excessive amount of funds. *Id*. Plaintiff further reported that Defendant Thompson had drawn on the medical insurance account to transfer funds to the general fund and then used those general funds to pay the local jail invoices. *Id*.

Before reporting the above issues to the OPA, Plaintiff had repeatedly expressed these same concerns to Defendant Thompson and Defendant Smith, who conveyed Plaintiff's concerns to Defendant Cabell County. *Id*. Defendant Thompson and Smith also knew that Plaintiff contacted the Office of the West Virginia State Auditor regarding outsourcing of payroll. *Id*. at 4–5. This information was also conveyed by Defendant Thompson to Defendant Cabell County. *Id*. at 5.

Multiple instances give rise to the inference that Defendants Thompson and Smith knew that the OPA investigation had expanded, at least due in part, to the reports Plaintiff had made. For example, after Plaintiff raised the concerns regarding the outsourcing of payroll, the lack of a

physical audit, and the increase on medical insurance contributions, members of the OPA contacted Defendants Thompson and Smith to ask questions about some of these same issues. *Id*. Additionally, in full view of at least Defendant Smith, members of the OPA had frequently come to Plaintiff's office and requested him to provide additional information surrounding their investigation. *Id*. Further, during a meeting in November of 2017, when Plaintiff questioned handing over the control of the payroll account to a third-party, Defendant Thompson told Plaintiff to "stop stirring the pot." *Id*. At this same meeting Defendant Thompson also informed those present that she was going to hand over control of the payroll account to the third-party "whether anyone liked it or not." *Id*. Finally, in December of 2017, the OPA issued a West Virginia Freedom of Information Act ("WVFOIA") request for information surrounding some of the same issues Plaintiff had raised with Defendants. *Id*. Approximately one week before Plaintiff was fired, Defendant Smith learned from the Chief Deputy Clerk that Plaintiff had been assisting with the preparation of documents in response to the WVFOIA request. *Id*. At that time, the Chief Deputy Clerk also informed Defendant Smith that a member of the OPA had come and spoken with Plaintiff in his office. *Id*. at 6. In response, Defendant Smith told the Chief Deputy Clerk that if anyone from the OPA came in the future, the OPA member should be directed to come to her personally and not Plaintiff. *Id*.

Thereafter, Plaintiff believed that Defendant Thompson intended to control what information was given to the OPA. *Id*. For example, when Plaintiff asked Defendant Smith questions about documents to be produced in response to the WVFOIA request, Defendant Smith would state that she had to ask Defendant Thompson. *Id*. Defendant Smith also cautioned Plaintiff that nothing could be produced in response to the WVFOIA request until both she and Defendant Thompson had reviewed the response. *Id*.

4

On January 8, 2018, during a meeting with Defendants Thompson and Smith, along with others, Plaintiff again expressed concerns over the outsourcing of the payroll function and how that would be implemented in compliance with the law. *Id*. Defendant Thompson became visibly agitated and told Plaintiff he was "no longer needed," and later that day Defendant Smith informed Plaintiff that he was being terminated from employment. *Id*. When Plaintiff asked Defendant Smith why he was being terminated, she told him, that "they do not have to give you a reason." *Id*.

It is important to note that Plaintiff asserts this is not the first time Defendant Thompson has been involved in a wrongful termination dispute. In 2016, Defendant Thompson discharged the IT Director who had engaged in whistleblowing about the fact that Defendant Thompson and Defendant Cabell County repeatedly failed to purchase an adequate means for back up of financial data, resulting in a loss of public financial data. *Id*. at 9. Defendant Thompson discharged the IT director without following the County's procedures for termination, and a lawsuit is currently pending in that matter. *Id*. Since the discharge of the IT director, Defendant Cabell County has allocated the oversight of Defendants' response to the ongoing OPA investigation of the County's financial affairs to Defendant Thompson. *Id*. Upon Plaintiff's information and belief, Defendant Cabell County did so with full knowledge that Plaintiff had expressed the aforementioned concerns to Defendants Thompson and Smith, that Plaintiff made similar reports to the OPA that resulted in the expansion of the investigation, and that he was participating in that investigation at the OPA's request. *Id*. at 9–10.

Each Defendant filed a motion to dismiss (ECF No. 10, 12, 14) on March 27, 2018, with an accompanying Memorandum in Support of the Motion (ECF No. 11, 13, 15). Plaintiff filed a Response to all motions on April 5, 2018 (ECF No. 16, 17, 18), and Defendants Cabell County and Beth Thompson filed a Reply on April 12, 2018 (ECF No. 19, 20). Defendant Phyllis Smith

5

did not file a Reply.

## II.   STANDARD OF REVIEW

Federal Rule 8(a) requires a complaint to include "a short and plain statement of the claim . . . showing entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2). To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must also be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotations and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

Accepting the factual allegations in the complaint as true—even when doubtful—the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotations and citations omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). Finally, a court must also "draw[ ] all reasonable factual inferences from those facts [alleged] in the plaintiff's favor . . . ." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (internal

quotations omitted) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citations omitted)).

## III.    DISCUSSION

As Defendants have moved to dismiss, in total, all three of Plaintiff's claims, the Court will address each in turn.

### A.  Count I and II: 42 U.S.C. §1983

*i.*     *Defendant Cabell County*

Defendant Cabell County argues that Plaintiff has failed to assert the facts needed to hold a local government liable under section 1983. *Mem. in Supp. of Def. Cabell County's Mot. to Dismiss*, ECF No. 11, at 7, 9.  The relevant portion of section 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983.

While section 1983 technically limits the scope of potential defendants to "person[s]," the Supreme Court has held that "Congress . . . intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, while *Monell* held that local governments may be held liable under section 1983, it also held that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, the Court concluded that a local government is liable only when the "execution of a government's *policy or custom* . . . inflicts the

injury." *Id*. at 694 (emphasis added). However, the "policy or custom" language from *Monell* leaves the question of when a "policy or custom" *occurs* unanswered. The Fourth Circuit has held that a policy or custom for which a local government may be found liable can arise in one of four possible ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotations and citations omitted).

Consistent with the rejection of *respondeat superior* liability for local governments, the Fourth Circuit has also held that a causation element is required in section 1983 liability, making a local government liable only when there is a "deprivation of constitutional right *caused* by [its policy]. . . ." *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (emphasis added).

In its Memorandum of Law in Support of its Motion to Dismiss, Defendant Cabell County argues that there are two reasons why it is not liable under section 1983. The first argument involves the interpretation of element four of *Lytle*. Defendant claims that Plaintiff attempts to establish its liability under "element four" of *Lytle* by claiming that it was the "custom" of the Cabell County to terminate employees that engaged in whistleblowing activities. *See Mem. in Supp. of Def. Cabell County's Mot. to Dismiss*, at 9. Defendant then accurately points to *Lytle* for the clear rule that "*isolated* incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice," and there must instead "be *numerous* particular instances of unconstitutional conduct in order to establish a custom or practice." *Lytle*, 326 F.3d at 473 (emphasis added). Defendant argues that Plaintiff's complaint is therefore flawed because his

only factual allegation tending to show this "custom" of Cabell County is the *single* instance when Defendant Thompson, a county official, discharged the IT director when the director engaged in whistleblowing activities. *See Mem. in Supp. of Def. Cabell County's Mot. to Dismiss,* at 10–11.

Defendant Cabell County's first argument is flawed for several reasons. First, the motion at issue here is a motion to dismiss under 12(b)(6). When the Court in *Lytle* was analyzing what facts are needed to successfully show "a practice . . . so persistent . . . as to constitute a custom or usage," the Court was deciding whether to affirm a district court's grant of a motion for *summary judgment*, not a motion to dismiss under 12(b)(6). *See Lytle*, 326 F.3d at 468. Thus, while it is true that Plaintiff will need to show more than just a single or isolated incident to ultimately *prevail* in his claim or to survive a motion for *summary judgment*, this Court is only evaluating if Plaintiff has asserted enough to prevail on a motion to *dismiss*. Under *Iqbal*, this means Plaintiff's complaint must only contain enough facts that, accepted as true, allows this Court to draw the "reasonable inference" that there have been a sufficient number of particular instances of unconstitutional conduct by Defendant Cabell County's officials. Additionally, this Court must draw all reasonable factual inferences in Plaintiff's favor.

Based on Plaintiff's complaint, this Court can draw a reasonable inference that there may have been other instances of unconstitutional conduct by county officials. In his complaint, Plaintiff states that Defendant Thompson is currently involved in an additional wrongful termination dispute stemming from a 2016 discharge of an IT Director who had engaged in whistleblowing. Defendant can argue that only one alleged instance of past unconstitutional conduct by a single official cannot, by itself, give rise to a "reasonable inference" that there have been other instances. However, this single act must be viewed in combination with three other crucial facts. First, Defendant Cabell County appeared to make a strategic decision when it

assigned Defendant Thompson—an official who is currently embroiled in a lawsuit for past unconstitutional conduct against a whistleblower—to oversee the investigation that a current employee, and whistleblower, is assisting the OPA in. Second, Defendant Thompson, as an appointed Administrator of Cabell County, was a relatively high-level official in a small organization, whose acts are more likely to become known and approved of by Defendant Cabell County, and thus reoccurring. Finally, when Plaintiff asked why he was terminated, Plaintiff was told by Defendant Smith that "they" do not have to give him a reason, implying that either Defendant Cabell County or multiple people made the decision to terminate his employment. The inference drawn here is that if a *group* is responsible for a final decision, as opposed to a single individual, that decision is more likely to be based on a pattern of similar decisions made in the past. Based on these facts, this Court can draw a reasonable inference that there may have been other instances of unconstitutional conduct by county officials.

The second reason why Defendant Cabell County's argument is flawed is because it improperly narrows its scope of liability based on Plaintiff's complaint. Despite Defendant's assertion that Plaintiff attempts to establish its liability under "element four" of *Lytle*, Plaintiff has not in fact limited his argument to a single theory of liability. Plaintiff sets forth numerous facts in his complaint that "state a claim to relief that is plausible on its face" based on the additional theories of liability available in *Lytle*.[1] For example, Plaintiff's complaint explains that he reported directly to appointed Clerk of Cabell County, Defendant Smith, and that the appointed County Administrator of Cabell County, Defendant Thompson, frequently sought to direct and control Plaintiff's work. Additionally, before reporting his concerns to the OPA, Plaintiff expressed the

---

[1] More specifically, the second theory that requires decisions of officials "with final policymaking authority," and the third theory that requires "an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens." *Lytle*, 326 F.3d at 471.

same concerns to Defendants Thompson and Smith, who upon Plaintiff's information and belief, conveyed Plaintiff's concerns to Defendant Cabell County. Finally, Defendant Thompson eventually told Plaintiff to "stop stirring the pot" and that he was "no longer needed," while Defendant Smith personally informed Plaintiff that he was being terminated from employment.

It can be reasonably inferred from these facts that either one, or all,[2] of Defendants Thompson, Smith, or Cabell County had "final policymaking authority," and that either one, or all, of these Defendants made the final decision to terminate Plaintiff because of his exercise of his First Amendment right to free speech. Because of the questionable circumstances surrounding Plaintiff's termination, it can also be reasonably inferred that Defendant Cabell County failed to properly train Defendants Thompson and Smith, and that failure manifests a deliberate indifference to the rights of citizens. Thus, even if Plaintiff failed to meet the factual standard required to survive a 12(b)(6) motion to dismiss under the "custom or usage" theory available in *Lytle*, Plaintiff's factual allegation in his complaint meets the 12(b)(6) standard on at least two of the other three theories of local government liability available in *Lytle.*

Defendant Cabell County's second argument for why it is not liable under section 1983 is that the causation requirement is not met. Defendant Cabell County asserts that causation is not shown because Plaintiff does not "allege that the Commission or anyone acting on its behalf terminated his employment," as Plaintiff merely states that the *county clerk* informed him that he had been terminated. *Mem. in Supp. of Def. Cabell County's Mot. to Dismiss*, at 11. Additionally, Defendant Cabell County asserts that neither it nor "anyone acting on its behalf, including County Administrator Thompson, had the *ability or authority* to terminate Plaintiff," even though it

---

[2] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official *or officials* responsible for establishing final policy with respect to the subject matter in question) (emphasis added).

concedes that it is a "statutory co-employer of non-elected officials who are employed in county offices." *Id.* at 12. Defendant Cabell County points to West Virginia Code 7-7-7 for authority on this position, which states, in relevant part:

> *The county clerk*, circuit clerk, sheriff, county assessor and prosecuting attorney, *by and with the advice and consent of the county commission, may appoint and employ*, to assist them in the discharge of their official duties for and during their respective terms of office, assistants, deputies and employees. The county clerk may designate one or more of his or her assistants as responsible for all probate matters.
>
> *Each county official named in this section shall have the authority to discharge any of his or her assistants, deputies or employees* by filing with the clerk of the county commission a discharge statement specifying the discharge action: Provided, That no deputy sheriff appointed pursuant to the provisions of article fourteen, chapter seven of this code, shall be discharged contrary to the provisions of that article.

W. Va. Code § 7-7-7 (a), (h) (emphasis added).

Defendant Cabell County goes as far as to state that section (h) vests the "sole" authority to terminate an employee with the elected official. *Mem. in Supp. of Def. Cabell County's Mot. to Dismiss*, at 12.

Defendant's position is contrary to West Virginia caselaw, as well as misleading. First, it is clear Plaintiff has alleged facts that suggest it is plausible and reasonable to infer that Defendant Cabell County, or Defendants Thompson or Smith acting on its behalf, terminated his employment. In his complaint, Plaintiff explains that when he asked Defendant Smith why he was being terminated, she told him that "*they* do not have to give you a reason." The obvious conclusion that can be drawn from this statement is that "they" refers to Defendant Cabell County. This pleaded fact alone satisfies Plaintiff's requirement to allege that Defendant Cabell County terminated his employment.

12

Second, a clear reading of West Virginia statutes, as well as West Virginia caselaw, demonstrate that Defendant Cabell County, or those acting on its behalf, had the authority to terminate Plaintiff. West Virginia Code 7-7-7(h) does not use or imply the word "sole"—despite Defendant Cabell County's best efforts to convince this Court otherwise—when vesting elected officials with the authority to terminate employees. Additionally, the Supreme Court of West Virginia, in *Burke v. Wetzel County Commission*, 815 S.E.2d 520 (W. Va. 2018), held that as a co-employer, a county commission does in fact have the legal right to terminate an employee of an official listed in West Virginia Code 7-7-7. In *Burke*, the plaintiff was terminated from his employment in the office of the Wetzel County Assessor, and filed a lawsuit against the Wetzel County Commission, alleging wrongful discharge. *Id*. at 526. The circuit court eventually dismissed the case pursuant to a motion to dismiss, finding that the plaintiff failed to allege that the Commission was the "appropriate authority." *Id*. at 539. However, the West Virginia Supreme Court overruled the circuit court's decision to dismiss the case, holding that its decision was erroneous, as the County Commission was his "joint employer" under West Virginia Code 6C-1-3(a), and thus could potentially be held responsible for his wrongful discharge. *See id*. at 540. Thus, Defendant Cabell County's position that the causation element of 1983 is not met in this case is incorrect, and its motion to dismiss Plaintiff's section 1983 claim should denied.

ii.     *Defendant Beth Thompson*

Defendant Thompson argues that Plaintiff has failed to assert the facts needed to hold her, the County Administrator, liable under section 1983. *Mem. in Supp. of Def. Thompson's Mot. to Dismiss*, ECF No. 15, at 6–9. As a government official being sued in her personal capacity, Defendant Thompson has the privilege of asserting qualified immunity. *See Kentucky v. Graham*, 473 U.S. 159, 165–167 (1985). For a plaintiff to defeat a government official's qualified immunity,

the plaintiff must demonstrate that the defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Logically, this means that at the pleading stage the plaintiff "must allege sufficient facts to set forth a violation of a constitutional right" to avoid a motion to dismiss under Rule 12(b)(6). *See Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018).

When the case at issue involves a government employee claiming his employer violated his First Amendment rights specifically, the Fourth Circuit uses "a three-prong test to determine if the employee's rights under the First Amendment were violated." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017). Relevant in this case is the third prong, which requires that "there [be] a sufficient causal nexus between the protected speech and the retaliatory employment action." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006). This causation requirement forces the plaintiff to show "that but for the protected expression the employer would not have taken the alleged retaliatory action." *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990) (internal quotations and citations omitted).

In her Memorandum of Law in Support of her Motion to Dismiss, Defendant Thompson argues that "Plaintiff is unable to demonstrate that [she] is the 'but for' cause of his termination for two reasons." *Mem. in Supp. of Def. Thompson's Mot. to Dismiss*, at 9. First, Defendant Thompson argues that Plaintiff, in his complaint, never even factually alleged that she terminated him, but instead only stated that "Defendant *Smith*" informed him that he was being fired. *Id*. Defendant Thompson's position is flawed, as she crucially overlooks other facts that demonstrate Plaintiff has factually alleged that she was the supervisor who actually terminated him. For example, Plaintiff asserts that in November of 2017 Defendant Thompson told Plaintiff to "stop stirring the pot," in response to Plaintiff's questioning of Defendant Thompson's actions. *Id*. at 5.

14

Plaintiff also stated that Defendant Thompson was the *first* person to suggest he was going to be discharged from employment when she told him that he was "no longer needed" on the same day that Defendant Smith informed him that he was being terminated. *Id.* at 7. Thus, while discovery may lead to a contrary *finding*, Plaintiff has at least factually *alleged* that Defendant Thompson was the "but for" cause of his termination.

Defendant Thompson's second argument for why Plaintiff is unable to demonstrate that she was the 'but for' cause of his termination mirrors Defendant Cabell County's argument above: that she had no "statutory authority" to carry out the termination.  *Mem. in Supp. of Def. Thompson's Mot. to Dismiss*, at 9. Defendant Thompson relies on West Virginia Code 7-7-7(h) for the proposition that *only* the County Clerk had the power terminate Plaintiff's employment, which, as discussed above, is incorrect based on the West Virginia Supreme Court's decision in *Burke*. Additionally, West Virginia Code 7-1-1a (1)(3)(E) states that Defendant Thompson, as the county administrator, has the authority to "employ all subordinates and employees for whose duties or work he or she is responsible to the commission." W. Va. Code § 7-1-1a (1)(3)(E). Therefore, if Plaintiff was a "subordinate" of Defendant Thompson under this statute, Defendant Thompson would have had the authority to terminate Plaintiff. Plaintiff's complaint states multiple facts that make it plausible that Plaintiff was a subordinate of Defendant Thompson. For example, Defendant Thompson instructed Plaintiff to "stop stirring the pot," Defendant Smith cautioned Plaintiff that nothing could be produced in response to the WVFOIA request until both she *and* Defendant Thompson had reviewed the response, and Defendant Cabell County had allocated to Defendant Thompson the oversight of the response of Defendants to the ongoing OPA investigation of the County's financial affairs. Because Plaintiff has factually alleged in his complaint that Defendant Thompson was the "but for" cause of his termination, her motion to

dismiss Plaintiff's section 1983 claim should be denied.

**B. Count III: West Virginia Whistle-blower Law**

*i.        Defendants Cabell County and Thompson*

Defendants Cabell County and Thompson argue that Plaintiff's whistle-blower claim fails as a matter of law. *Mem. in Supp. of Def. Cabell County's Mot. to Dismiss*, at 13; *Mem. in Supp. of Def. Thompson's Mot. to Dismiss*, at 11. The West Virginia Whistle-blower law prohibits discharge by an "employer" in response to an employee's "good faith" report of "an instance of wrongdoing or waste" to the employer or appropriate authority. W. Va. Code § 6C-1-3(a). The Whistle-blower law broadly defines an "employer" to include "a person supervising one or more employees, including the employee in question, a superior of that supervisor, or an agent of a public body." W. Va. Code § 6C-1-2(c).

Defendants Cabell County and Thompson's arguments for why they cannot be liable under the Act mirror their arguments discussed *supra*: they were not Plaintiff's "statutory employer," and thus had no authority to terminate Plaintiff, and even if they were, Plaintiff did not factually allege he was terminated by either of them. *See Mem. in Supp. of Def. Cabell County's Mot. to Dismiss*, at 13; *Mem. in Supp. of Def. Thompson's Mot. to Dismiss*, at 11–12. For the same reasons discussed above in Section (A), Defendants' arguments are without merit, and their motion to dismiss Plaintiff's West Virginia Whistle-blower claim should be denied.

**C. Count IV: Unlawful Retaliatory Discharge**

*i. Defendants Cabell County, Thompson, and Smith*

Defendants Cabell County, Thompson, and Smith each claim, for precisely the same reasons, that Plaintiff's common law claim for unlawful retaliation—also known as a *Harless* claim—must fail as a matter of law.

In general, employers in West Virginia "may discharge an 'at will' employee at any time for any reason." *Herbert J. Thomas Memorial Hosp. Ass'n v. Nutter*, 795 S.E.2d 530, 540 (W. Va. 2016) (citing *Kanagy v. Fiesta Salons, Inc.*, 541 S.E.2d 616, 619 (W. Va. 2000)). However, the West Virginia Supreme Court, in *Harless v. First. Nat'l Bank in Fairmont*, 246 S.E.2d 270 (W. Va. 1978), tempered this unrestricted right of an employer to fire an employee. In *Harless*, the Court held that "where [an] employer's motivation for [a] discharge is to contravene some substantial public policy principle, then [an] employer may be liable to [an] employee for damages occasioned by this discharge." Syl. Pt. 1, *Harless*, 246 S.E.2d at 271. However, the West Virginia Supreme Court has limited *Harless* claims to situations where "there [is] no other mechanism available to enforce the public policy at issue." *Hill v.* Stowers, 680 S.E.2d 66, 76 (W. Va. 2009).

The West Virginia Supreme Court has provided four elements necessary to state a claim for retaliatory discharge: (1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) That plaintiff's dismissal was motivated by conduct related to the public policy (the causation elements); (4) The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Feliciano v. 7–Eleven, Inc.*, 559 S.E.2d 713, 723 (W. Va. 2001) (internal quotations and citations omitted).

Defendants do not assert that any of the four elements necessary in *Feliciano* have not been met. Instead, Defendants only state that Plaintiff already has mechanisms available—the Whistle-blower law and state constitutional tort claims—to enforce the public policies at issue, and therefore his *Harless* claim should be dismissed pursuant to *Hill*. *See Mem. in Supp. of Def. Cabell*

*County's Mot. to Dismiss*, at 16; *Mem. in Supp. of Def. Thompson's Mot. to Dismiss*, at 14; *Mem. in Supp. of Def. Smith's Mot. to Dismiss*, at 9. Plaintiff concedes that—with respect to the public policies that the *Whistle-blower Law* protects—Defendants' argument is valid *so long as* the motion to dismiss Plaintiff's Whistle-blower claim is denied. *See Mem. in Opp. to Def. Cabell County's Mot. to Dismiss*, ECF No. 16, at 19.  Plaintiff concludes that if Defendants' motions to dismiss Plaintiff's Whistle-blower claim is granted, then "the Whistleblower claim would not be *available* to Plaintiff . . . ." *Id.* (emphasis added).

This Court agrees with Plaintiff that Defendants' argument—with respect to the public policies that the *Whistle-blower Law* protects—is valid, but rejects Plaintiff's position that the outcome of Defendants' motions to dismiss are relevant. In *Hill*, the Supreme Court made clear that a *Harless* claim is unavailable when the legislature has created "procedures" that will enforce the West Virginia public policy at issue. *See Hill*, 680 S.E.2d at 76. Thus, the question of whether a mechanism is available to Plaintiff based on the *facts of his case* is irrelevant to the question of whether the West Virginia legislature has *provided* him with a mechanism to enforce the public policies at issue. This can be the only logical position, as any flaw in Plaintiff's complaint that would require this Court to grant a 12(b)(6) motion regarding the Whistle-blower claim would also require this Court to grant a 12(b)(6) motion regarding the *Harless* claim. Therefore, because the West Virginia Whistle-blower Law is a mechanism that allows plaintiffs to report wrongdoing without fear of being discharged, Plaintiff cannot maintain a *Harless* claim for retaliatory discharge for reporting wrongdoing.

The next, and final, question is whether Plaintiff can still maintain a *Harless* claim for retaliatory discharge in violation of *other* public policies, for which there are no other mechanisms available. Plaintiff states in his complaint that the "West Virginia Constitution provides for both

18

the freedom of speech and the right to redress grievances to the government," and that his "exercise of his constitutional rights . . . was a substantial or motivating factor for Plaintiff's discharge from employment," in contravention of the substantial public policy of West Virginia. *Compl.*, at 12–13. Again, Defendants do not assert that any of the four elements necessary in *Feliciano* have not been met. Defendants argue only that Plaintiff has another mechanism available for the public policy violation that occurs when an employee is terminated for exercising his state constitutional rights, specifically a "state constitutional tort claim" based on the Supreme Court's decision in *Hutchison v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996). *See Mem. in Supp. of Def. Cabell County's Mot. to Dismiss*, at 16; *Mem. in Supp. of Def. Thompson's Mot. to Dismiss*, at 14; *Mem. in Supp. of Def. Smith's Mot. to Dismiss*, at 9.

Defendants are incorrect to rely on *Hutchison* for the proposition that it recognizes a general common law state constitutional tort action. As plaintiff notes, *Hutchison* was specifically deciding only a due process issue. *See Mem. in Opp. to Def. Cabell County's Mot. to Dismiss*, at 20; *Hutchison*, 479 S.E.2d at 660 (holding that "[t]here is no dispute . . . that a private cause of action exists where state government, or its entities, cause injury to a citizen by denying *due process*.") (emphasis added). Additionally, even *if* a general common law state constitutional tort action is an available remedy under *Hutchison*, it is not clear to this Court that the remedy would render a *Harless* claim in this case "unavailable." As stated earlier, the mechanism that rendered a *Harless* claim unavailable in *Hill* was created by the *legislature*, as opposed to the judicially created state constitutional tort cause of action argued here. *See Hill*, 680 S.E.2d at 76 (holding that there are "procedures in place" that "constitute the mechanism by which the *Legislature* has sought" to enforce the public policy at issue, and that "criminal *statutes*" are relevant in determining that there are other mechanisms available) (emphasis added). Therefore, because

Plaintiff has pled his constitutional right of free speech and right of redress as substantial public policies, and because he has no other mechanisms available to enforce violations of *these* public policies, Defendants' motions to dismiss Plaintiff's unlawful retaliatory discharge claim should be denied.

## IV. CONCLUSION

Based upon the analysis provided above, the Court **DENIES** Defendants Cabell County, Thompson, and Smith's Motions to Dismiss (ECF No. 10, 12, 14).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:     August 22, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE